UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

15 CV 1969 (NRB) (GWG)

------------------------------X

MONIQUE LINDEMAN,

Plaintiff,

JUDGE BUCHWALD

-against-

SAMARITAN VILLAGE, INC.

Defendant.

------------------------------X

**COMPLAINT**

**JURY TRIAL DEMAND**

Case No.:

**ECF CASE**

RECEIVED U.S.D.C. S.D. N.Y.

RECEIVED MAR 16 2015 U.S.D.C. S.D. N.Y.

MONIQUE LINDEMAN, the plaintiff, brings this action to vindicate violations of her civil rights and to redress the hostile, severe, persistent, and longstanding harassment and discrimination she experienced at her workplace based on her sex, gender, sexual orientation and disability in violation of her Federal, New York State and New York City rights.

**PRELIMINARY STATEMENT**

1. This action arises out of the illegal and wrongful discharge of Ms. Lindeman on or about May 20, 2013. Ms. Lindeman alleges, that SAMARITAN VILLAGE, INC. (hereinafter, "SAMARITAN" or "defendant") discriminated against her on the basis of her sex, sexual orientation, and disability through, *inter alia*, its (1) intentional discriminatory conduct and practices, (2) discriminatory policies, practices, and procedures in selection, promotion, and advancement, (2) sexual harassment, and (3) retaliation in violation of Title VII of the Civil Rights Act of

1964, as amended by the Civil Rights Act of 1991("Title VII"), Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, New York Executive Law §§ 290-301 ("New York State Human Rights Law"), and N.Y.C. Admin. Code § 8-107 *et seq.* ("New York City Human Rights Law").

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

3. This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same case or controversy as the federal claims.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)& (c) and 42 U.S.C. § 2000e-5(f) because defendant transacts substantial business in this District, and because plaintiff resides in New York County.

5. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

6. Plaintiff has exhausted her administrative remedies in compliance with the statutory prerequisites of Title VII by duly filing charges with the Equal Employment Opportunity Commission,

and a Right to Sue letter was issued on or about December 18, 2014.

**THE PARTIES**

7. Between December 2005 until on or about May 20, 2013, Ms. Lindeman was an employee at SAMARITAN, as defined by Title VII, New York State Human Rights Law, and New York City Human Rights Law. She is a resident of the State of New York, New York County.

8. Ms. Lindeman worked primarily at SAMARITAN'S Forbell Men's Shelter located in Kings County, New York, and to a lesser extent at associated satellite annex locations in Kings County and Queens County, New York.

9. Upon information and belief, defendant SAMARITAN is a domestic corporation organized under the laws of New York with a principal executive office in the County of Queens at 138-02 Queens Boulevard, Brairwood, New York 11435. It maintains many facilities in this District, and it regularly transacts business in this District.

10. Upon information and belief, SAMARITAN is a foreign corporation authorized to do business in the State of New York. SAMARITAN has over five hundred (500) employees.

11. At all times relevant to this action, defendant, SAMARITAN, is an "employer" as defined by defined by Title VII,

New York State Human Rights Law, and New York City Human Rights Law.

**FACTUAL ALLEGATIONS**

12. Ms. Lindeman began working for SAMARITAN as a custodial worker at the Forbell Men's Shelter on or about December 2005. She performed all aspects of her work in a diligent manner. In fact, she has never received a negative evaluation or reprimand from SAMARITAN for failing to perform her job satisfactorily.

13. Despite Ms. Lindeman's skills and qualifications, defendant discriminated against on the basis of her sex and gender, because she did not conform to defendant's traditional notions and stereotypes of female appearance and behavior. Additionally, SAMARITAN discriminated against Ms. Lindeman on the basis of her sexual orientation and her partially formed right hand, which it perceived as a disability. Ultimately, defendant wrongfully terminated her on May 20, 2013.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Sexual Harassment and Hostile Working Environment**

14. From the outset of hiring in 2005 to the date of her termination, Ms. Lindeman was subjected to a hostile and discriminatory environment condoned and fostered by SAMARITAN. She was subjected to stares, sneers, jokes, innuendo, gossip and ridicule by colleagues, clients and management. Derogatory

language was commonplace and openly directed towards her. Such phrases which were used include but is not limited to "gay girl", "fat dyke", "faggoty", "fruity", "fruitcake" and "needs some dick."

15. The manager and supervisors of the facility where she worked were fully cognizant and aware of the harassment she received on the basis of her sexual orientation and gender, and yet, no one in a managerial capacity took disciplinary measures against the perpetrator and wrongdoers who worked at the facility.

16. Wayne Jordan (hereinafter "Jordan") was employed by SAMARITAN in a managerial capacity at Forbell Men's Shelter for the entire duration of Ms. Lindeman's employment at SAMARITAN. Upon information and belief, Jordan is presently employed by SAMARITAN as the Director of Operations at Forbell Men's Shelter.

17. At the time that Jordan interviewed Ms. Lindeman for the custodial position in 2005, he expressed beliefs that women do not belong in the field of maintenance based on his notions of gender stereotypes, and upon information and belief he opposed her hiring.

18. Throughout Ms. Lindeman's employment, Jordan contributed to the discriminatory and hostile work environment through behavior that included but was not limited to stares, sneers,

hateful speech, extraordinary scrutiny, baseless complaints and retaliatory job actions. Ms. Lindeman felt distraught, sad, and distressed at the offensive behavior and comments that she would receive.

19. Additionally, Ms. Lindeman was subjected to heightened scrutiny and discipline, which were unrelated to job performance as a custodian, on the basis of her gender, sexual orientation, and disability. Upon information and belief, Jordan spurred numerous complaints against Ms. Lindeman which were never substantiated.

20. In addition to scrutinizing Ms. Lindeman and her work on the basis of her gender, sexual orientation, and disability, Jordan launched multiple complaints against her based on false beliefs and suspicions he had about a friendship Ms. Lindeman had forged with another female colleague.

21. Upper level management would entertain these baseless complaints, born from prejudice, against Ms. Lindeman and interrogated her multiple times over the course of years, despite the lack of conclusive evidence that Ms. Lindeman was engaging in an inappropriate relationship or exhibited acts or behavior that bolstered such claims.

22. The sexually harassing and discriminatory conducts were sufficiently severe and pervasive so as to unreasonably interfere

with Ms. Lindeman's physical health and work performance and so as to create an intimidating, hostile and offensive working environment.

23.  Ms. Lindeman complained on numerous occasions to Joan Marra, the former Director of Operations at Forbell, and Rhonda Smith, the former Director of Forbell, about the hostile environment she endures as a result of discrimination, harassment and hostility. However, despite Ms. Lindeman's multiple efforts, management discouraged, disregarded, minimized and ignored her complaints while failing to conduct any investigation.

24.  Defendant failed to take any appropriate corrective action, and instead, exacerbated the situation under which plaintiff was subjected during the course of her employment.

25.  The acts and omissions of SAMARITAN, described above in failing to protect Ms. Lindeman from discrimination and harassment against her on the basis of sex, gender, sexual orientation and disability and in failing to address her complaints is a violation of her civil rights preserved under Title VII, New York Executive Law §§ 290-301 ("New York State Human Rights Law"), and N.Y.C. Admin. Code § 8-107 *et seq.* ("New York City Human Rights Law").   She endured and suffered humiliation, emotional distress, and physical pain.

**AS AND FOR A SECOND CAUSE OF ACTION:**
**Promotion Discrimination**

26. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

27. Wayne Jordan undermined Ms. Lindeman in her attempts at career advancement and career training at SAMARITAN.

28. Ms. Lindeman was passed over multiple times for promotions to "Staff-On-Duty" vacancies from 2012 to 2013 in favor of less qualified male candidates. The "Staff-On-Duty" positions offered greater salary, responsibility and visibility at SAMARITAN.

29. All promotions to "Staff-On-Duty" at Forbell Men's Shelter during the relevant time period were awarded to gender conforming male heterosexuals free from obvious disabilities. She was treated differently than similarly situated male employees, and by subjecting her to discriminatory denials of promotions and discriminatory denials of developmental opportunities, defendant violated Title VII, New York State Human Rights Law, and New York City Human Rights Law.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Retaliation And Wrongful Termination**

30. Plaintiff re-alleges and incorporates by reference each

and every allegation in each and every aforementioned paragraph as if fully set forth herein.

31. On or about May 10, 2013, Ms. Lindeman was placed on administrative leave by Karen Ford (hereinafter "Ford"), the Director of Forbell, after she was accused of engaging in a same sex relationship with a woman alleged to have been a client of SAMARITAN, non-party Myrlande Auguste.

32. Upon information and belief, Ford authorized Jordan's investigation into the allegation made against Ms. Lindeman.

33. Upon information and belief, Ford and Jordan commenced a superficial and inadequate investigation against Ms. Lindeman on the basis of false allegations and baseless claims. Their investigation consisted solely of a cursory review of Facebook pictures and posts. Upon information and belief, no interviews or other forms of evidence gathering were conducted by Ford and Jordan.

34. Despite the absence of a thorough and well-informed investigation and the existence of conclusory proof that Ms. Lindeman was engaging in an inappropriate relationship with a client, she was terminated from her employment on or about May 20, 2013.

35. The actions of SAMARITAN, Ford and Jordan in placing Ms. Lindeman on leave and in ultimately terminating her without

cause demonstrates a practice of unlawful discrimination based on sex, gender, sexual orientation, and disability.

36. After her termination, Ms. Lindeman applied for unemployment benefits and SAMARITAN opposed the application alleging that her same sex relationship was cause for discharge.

37. A full and fair hearing was held before Administrative Law Judge Steven Perlmutter at the Unemployment Insurance Appeal Board of the New York State Department of Unemployment Administration. Judge Perlmutter found no merit to SAMARITAN'S allegations and ultimately no cause for Ms. Lindeman's termination. He awarded her full unemployment benefits.

38. SAMARITAN chose not to appeal the decision by Judge Perlmutter.

39. Defendant violated Title VII, New York's Human Rights Law §290 *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* for firing Ms. Lindeman in retaliation for asserting her civil rights and opposing discriminatory practices as forbidden under relevant statutes.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**Employer Liability Based on Discriminatory Conduct by Employee Pursuant to N.Y.C. Admin. Code § 8-107(13)**

40. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein

41.   SAMARITAN   knew   of   and   acquiesced   to   Jordan's discriminatory conduct and behavior by failing to take immediate and appropriate corrective action. In addition, the defendant failed  to  exercise  reasonable  diligence  to  prevent  such discriminatory conduct.

42.   SAMARITAN continued to retain employees known to commit and/or condone harassment and discrimination at the workplace.

43. Furthermore, defendant through its agents or supervisors failed  to  adequately  supervise,  control,  discipline,  and/or otherwise  penalize  the  conduct,  acts,  and  omissions  of  its employees.

44.   Defendant failed to establish programs, policies, and procedures  for  the  prevention  and  detection  of  unlawful discriminatory  practices  by  employees,  agents,  and  persons employed as independent contractors.

45.  As a direct and proximate consequence of defendant's conduct, plaintiff suffered damages therefrom including, but not limited to, pecuniary losses, severe emotional distress and other damages.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**

46. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

47. SAMARITAN knew of and indeed fostered the hostile work environment because of plaintiff's sex, gender, sexual orientation and disability.

48. The acts and omissions of SAMARITAN, described above, were extreme, outrageous, reckless, callous and evil, and they were made with the intention to cause Ms. Lindeman severe emotional distress or with recklessness of the probability that she will suffer emotional distress, knowing that she was present when such conduct occurred.

49. Ms. Lindeman is informed and believes, and based thereon alleges, that the defendant's conduct as described above was willful, wanton, malicious, and done in reckless disregard for the safety and well-being of plaintiff. By reason thereof, plaintiff is entitled to punitive or exemplary damages from the defendants in a sum according to proof at trial.

50. As a direct and proximate result of the defendant's willful, knowing, and intentional discrimination and retaliation against the plaintiff, plaintiff has suffered and will continue to suffer pain, humiliation, and emotional distress.

51. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, the defendant may have engaged in other discriminatory practices against her which are not yet fully known. At such time as such discriminatory practices become known, plaintiff will seek leave of Court to amend this Complaint in that regard.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**Negligent Failure To Prevent Retaliation**

52. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

53. SAMARITAN negligently handled the complaints and acts of harassment and discrimination against Ms. Lindeman which were perpetuated by the employees. Defendant failed to take all reasonable steps necessary to prevent discrimination and harassment.

54. SAMARITAN owed a duty to Ms. Lindeman to provide her with a safe working environment free from pervasive acts of harassment.

55. SAMARITAN's failure to monitor and correct harassment and discrimination that she endured constitute a breach of that duty.

56. As a direct and proximate cause of the breach of thatduty, Ms. Lindeman suffered damages therefrom including, but not limited to pecuniary losses, severe emotional distress and other damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays that this Court:

(a) Enter a declaratory judgment that the acts of Defendant complained of herein are in violation of the laws of the United States, the State of New York, the City of New York;

(b) Order defendant to make plaintiff whole by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices including, but not limited to, front pay and reinstatement and promotion;

(c) Order defendant to make plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices and acts partially described herein and an award of rehabilitative damges in amounts to be determined at trial;

(d) Order defendant to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices and acts complained of including, but not limited to, pain, suffering, and humiliation in amounts to be determined at trial;

(e) Enjoin the defendant from engaging in unlawful discriminatory practice or acts of discriminatory harassment;

(f) Order defendant to pay plaintiff punitive damages for defendant's intentional, malicious and reckless conduct in amounts to be determined at trial;

(g) Award compensatory damages to the plaintiff for grievances she suffered by defendant's violation of relevant statutes and applicable law;

(h) Award plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by defendant's conduct;

(i) Award plaintiff the costs of this action, together with reasonable attorneys' fees as provided in Title VII and other applicable laws;

(j) Award plaintiff treble damages as permitted by law;

(k) Grant such further relief as to this Court seems proper and just

**JURY TRIAL DEMAND**

Plaintiff respectfully demands a trial by jury on all questions of fact raised in this action.

Dated: New York, New York
March 13, 2015

Respectfully submitted,

Neal Wiesner
Wiesner Law Firm
Attorney for Plaintiff
34 East 23rd Street - 6th Floor
New York, New York 10010
nwiesner@wiesnerfirm.com
(212) 732-2225